IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | CAUSE NO. EP-10-CR-1707-DB |
| | § | |
| v. | § | |
| | § | |
| DALLAS BYERS | § | |
| | § | |

## GOVERNMENT'S RESPONSE TO
## DEFENDANT'S SENTENCING MEMORANDUM

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the United States of America, by and through the United States Attorney for the Western District of Texas, and files its Response to Defendant's Sentencing Memorandum and would respectfully show unto this Honorable Court the following:

### INTRODUCTION

Although styled as a Sentencing Memorandum, most of defendant's brief actually is objections to the Presentence Investigation Report (PSR), which more properly should be sent to the Probation Department.[1]  Nevertheless, as defendant also requests a variance in this case, the Government will respond to all points in defendant's Memorandum.

---

[1] The Government is serving a copy of this Response on the Probation Officer assigned to this cause.

## I. OBJECTIONS TO PSR

### A. Acceptance of Responsibility (PSR, Page 5, ¶ 15)

Defendant contends he should be awarded full points for acceptance of responsibility, arguing the marijuana remained in his system from the date he was arrested. While the Government acknowledges the award of an acceptance of responsibility reduction is solely within the Court's discretion, and takes no position thereon, the Government feels compelled to correct the record as to some of the facts stated in defendant's Memorandum.

Defendant states:

> [Defendant] admitted to being addicted to marijuana and to having smoked on the day of arrest. Marijuana stays in your system for quite some time, and when he was tested shortly after being released on bond, he tested positive for marijuana. It was still in his system. This was not subsequent violations. When asked when was the last time he used, he clearly stated it was on the day he was arrested, meaning when he was arrested in El Paso on the day of the sting [May 23, 2010]. The Probation officer interviewing assumed he meant when he was taken back into custody on August 16, 2010.

[Motion, Doc, 34, p. 1] Defendant's logic is flawed and medically unsupportable.

Defendant was granted bond on May 27, 2010. His first positive urine test for marijuana was on June 10th, approximately 13 days after his release. He was admonished and referred for drug counseling. Defendant again had a positive urine test on July 28, 2010, a full two months after being release.d

Urine tests for marijuana are based on detection a metabolite of delta-9-THC, which is the primary pharmacologically active component of marijuana. Studies involving humans indicate that 80%-90% of the total dose of delta-9-THC is excreted within 5 days – approximately 20% in urine and 65% in feces. Urine from marijuana users contains quantities of the metabolite in both free and conjugated form, as well as other cannabinoids

(THC and its metabolites) detectable by standardized testing. The outside length of time THC/Marijuana and cannibis are detectable in the urine is as follows:

| SUBSTANCE | URINE |
|---|---|
| THC/Marijuana (single use) | 1 to 3 days |
| THC/Marijuana (habitual use) | up to 14 days |
| Cannabis (single use) | 1 to 3 days |
| Cannabis (habitual use) | up to 14 days |

(Source: Center for Disease Control (CDC)). Thus, while it is possible (although not probable) defendant retained marijuana metabolites in his system on June 10, 2010, from having smoked marijuana on the date of his arrest, the same cannot be said for his positive drug test on July 28th.

### B. **Specific Offense Characteristics** (PSR, Page 6, ¶ 18 - Undue Influence)

Under the Guidelines in effect at the time of the commission of the offense, this enhancement is correct. *See United States v. Root*, 296 F.3d 1222, 1233 (11th Cir. 2002). However, the relevant Guideline, § 2G.13, Application Note 3, was amended effective November 1, 2010, to make clear the enhancement provided for under U.S.S.G. § 2G1.3(b)(2)(B) does not apply in an undercover "sting" operation such as was the case herein. As such, it appears under the current version of the Guidelines, defendant should not be held accountable for this enhancement

### C. **Use of a Computer Enhancement** (PSR, Page 6 , ¶ 19)

The enhancement under U.S.S.G. § 2G1.3(b)(3) for use of a computer in the commission of the offense is correctly applied.

Pursuant to § 2G1.3(b)(3), a two-level increase is applied to a defendant's base offense level "[i]f the offense involved the use of a computer or an interactive computer

3

service to (A) persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct...." Application Note 4 to § 2G1.3 explains that "[s]ubsection (b)(3) is intended to apply only to the use of a computer or interactive computer service to communicate directly with a minor or with a person who exercises custody, care, or supervisory control of the minor."

Defendant argues "perhaps when this section 2G1.3(b)(3) was added, that being the use of a computer in the commission of the crime, perhaps few people had used computers and therefore it was an element of intense planning or use of high technology to guarantee a success of the crime ...". Sentencing Memo, p. 3. Defendant's argument is without merit in that this Guideline, along with the contested enhancement, was created under the guidelines which came into effect on November 1, 2004 – well after computers were in general use for internet access and connection with others.

### D. Recalculation of Guidelines

If the 2-point enhancement for undue influence under § 2G1.3(b)(2)(b) is removed, the Adjusted Base Offense Level/Total Offense Level becomes 26, with a Criminal History Category of I, for a recommended sentencing range of 63 to 78 months.

## II. MOTION FOR VARIANCE

Defendant also includes in his Memorandum a request for a variance. In a creative, but legally unsupported argument, he advances two related theories – first, the internet chat room made me do it and, second, the mere presence of the detective in the chat room made me do it. Defendant also submits due to the collateral consequences of having been convicted, that is, having to register as a sex offender, he should be awarded a decreased penalty. None of defendant's arguments have merit.

First, defendant was not "lured" into either the chat room or striking up a private chat with the detective. Defendant chose to enter the chat room and chose to strike up a private conversation with the detective (who was posing as a 15-year old girl). He well was aware of her age each time he went back to the chat room to seek her out. The chat logs, which are supplied to the Court along with the PSR, plainly show defendant believed the undercover officer was 15 years old before soliciting her for a sexual encounter:

Excerpts from chat log 5-12-2010:

elpaso_high_chic (3:29:34 PM): wat skool u go too
dallasbyers32 (3:29:46 PM): im in cruces
elpaso_high_chic (3:29:55 PM): oh yeah
dallasbyers32 (3:30:02 PM): n im older then u:P lol
elpaso_high_chic (3:30:13 PM): like how old
dallasbyers32 (3:30:17 PM): guess
elpaso_high_chic (3:30:25 PM): u kno how old i am?
dallasbyers32 (3:30:50 PM): 15?
elpaso_high_chic (3:31:01 PM): hey how u kno did i already tell ya
dallasbyers32 (3:31:12 PM): yeah when we first chatted
elpaso_high_chic (3:31:15 PM): o
dallasbyers32 (3:31:17 PM): the other day
elpaso_high_chic (3:31:23 PM): soryry i forgots
elpaso_high_chic (3:31:34 PM): i say ur like hmmm
elpaso_high_chic (3:31:38 PM): 30
dallasbyers32 (3:31:56 PM): lol u ever hooked up with someone that old
elpaso_high_chic (3:32:13 PM): was i rite
dallasbyers32 (3:32:20 PM): na im not that old
elpaso_high_chic (3:32:25 PM): k 25
dallasbyers32 (3:32:29 PM): 26
. . .
dallasbyers32 (3:41:46 PM): u need someone older:>
elpaso_high_chic (3:41:56 PM): maybe i do
dallasbyers32 (3:42:34 PM): whats oldest guy u hooked up with

5

>elpaso_high_chic (3:43:00 PM): i told u only once i thiink he was like 20 or 22
>elpaso_high_chic (3:43:21 PM): wat about u
>elpaso_high_chic (3:43:32 PM): wat is youngest
>dallasbyers32 (3:43:41 PM): 16
>. . .
>dallasbyers32 (3:46:55 PM): so what u doin
>elpaso_high_chic (3:47:06 PM): talkin wid u
>dallasbyers32 (3:47:26 PM): what u wanna chat about
>elpaso_high_chic (3:47:35 PM): watever
>dallasbyers32 (3:47:42 PM): u pick:P
>elpaso_high_chic (3:47:57 PM): i don't care
>dallasbyers32 (3:48:06 PM): i usually talk about sex lol
>elpaso_high_chic (3:48:10 PM): k
>dallasbyers32 (3:48:15 PM): u ok with that
>elpaso_high_chic (3:48:23 PM): yeah im not a baby
>[defendant then proceeds to ask about various sexual acts]

On May 20, 2010, Byers once again sought out the detective and they chatted via Yahoo! Instant Messenger.  During the conversation, Byers expressed an interest in meeting the detective, believing she was a 15-year old girl, to engage in sexual activity. Byers discussed coming to El Paso, TX on Sunday, May 23, 2010 at approximately 2:00 PM, to pick the girl up and take her back to Las Cruces, NM.  The following is an excerpt from a conversation on May 20, 2010 between Byers and the detective:

>dallasbyers32 (4:06:55 PM): u ever met someone on here
>elpaso_high_chic (4:08:50 PM): not like this
>. . .
>dallasbyers32 (4:13:45 PM): ok cool so u wanna get fuked up sun night
>elpaso_high_chic (4:14:08 PM): drink some not wasted i cant smell like beer on monday at school
>dallasbyers32 (4:14:31 PM): lol true u better brings clothes u can shower at my apt
>. . .
>dallasbyers32 (4:18:09 PM): i get naughty when im buzzed is that a problem:>

6

    elpaso_high_chic (4:19:08 PM): wat u mean naughty
    dallasbyers32 (4:19:30 PM): like to fuk hehe
    elpaso_high_chic (4:19:49 PM): guess not
    dallasbyers32 (4:20:39 PM): so ur down
    elpaso_high_chic (4:21:07 PM): i just dont wanna get pregnant
    dallasbyers32 (4:21:41 PM): how many guys u slept with
    elpaso_high_chic (4:21:46 PM): 1
    dallasbyers32 (4:22:05 PM): do u wanna fuk? if u dont ill respect that
    . . .
    dallasbyers32 (4:29:17 PM): have u wanted to fuk again
    elpaso_high_chic (4:29:29 PM): havnt thought about it
    dallasbyers32 (4:29:43 PM): did u only have sex one time
    elpaso_high_chic (4:29:47 PM): yeah
    dallasbyers32 (4:29:54 PM): did u like it
    elpaso_high_chic (4:30:04 PM): it was not wat i thought

As shown, defendant was not "targeted" by the detective, but was a willing participant and, in fact, the instigator of the sexual encounter. To now claim the internet and/or the detective made him commit the crime defies logic and reality.[2] Defendant had the chance to turn away upon learning "elpaso_high_chic" was 15, but he *chose* to pursue her and a sexual relationship. He should not be rewarded for doing so.

The Government further notes this is not the first time defendant had sought out and had sex with a young teen, as defendant suggests in his motion when he states: [d]efendant does not prefer younger women, but this idea was surprisingly dangled in front of him and curiosity got the best of him." [Motion, p. 6]. By defendant's own admission,

---

[2] Whether religious leaders condemn internet dating sites, as defendant argues, is irrelevant to this action.

7

both to the detective when undercover[3] and to the agents upon arrest, he has previously had sex with a 16-year old.

Finally, defendant argues the collateral consequences of his conviction, that is registration as a sex offender, supports his request for a variance. In other contexts, this argument has been rejected[4] and the Government urges the same be done here.

Furthermore, public policy favors such restrictions and they are common and uniform for all sex offenders. These consequences are for the protection of the public and do not make defendant's case unusual or merit significant weight in his sentencing. A variance based on this argument would lead tom, not avoid, unwarranted sentencing disparity compared to other offenders who commit similar offenses. *See* 18 U.S.C. § 3553(a)(6).

## **CONCLUSION**

Based on the foregoing, the Government submits the arguments and objections set forth in defendant's Sentencing Memorandum, with the exception of the one with which the Government has agreed, are without merit and, therefore, should be

---

[3] *See* Chat log, *supra*, May 12, 2010, wherein defendant states the youngest girl he has had sex with was 16. Defendant reconfirmed this statement to the arresting agents.

[4] In *United States v. Nnanna*, 7 F.3d 420, 422 (5th Cir. 1993) and *United States v. Restrepo*, 999 F.2 640, 644 (2d Cir. 1993), *cert. denied*, 510 U.S. 954 (1993), the Court of Appeals held collateral consequences, such as the likelihood of deportation or ineligibility for more lenient conditions of imprisonment, which an alien may incur following a federal conviction are not a basis for downward departure. *See also, United States v. Restrepo*, 999 F.2d 640, 644 (2nd Cir 1993); *United States v. Alvarez-Cardenas*, 902 F.2d 734, 737 (9th Cir. 1990); *United States v. Soto*, 918 F.2d 882, 884-85 (10th Cir. 1990). The Government submits, although decided under the Guidelines, the *Nnanna* decision still is good law and has been reaffirmed by the Court of Appeals for the Fifth Circuit in *United States v. Garay,* 235 F.3d 230 (5th Cir. 2000).

rejected by this Honorable Court.

                                Respectfully submitted,
                                JOHN E. MURPHY
                                UNITED STATES ATTORNEY

By:   /s/
        J. BRANDY GARDES
        Assistant U.S. Attorney
        Calif. Bar No. 144770
        United States Attorneys Office
        700 E. San Antonio, Ste. 200
        El Paso, Texas 79901
        (915)534-6884
        (915)534-3461 - fax

## CERTIFICATE OF SERVICE

      I hereby certify that on the 8th day of November, 2010, a true and correct copy of the redacted Motion was electronically filed with the Clerk of the Court using the CM/ECF System which will transmit notification of such filing to the following CM/ECF participant

Francisco Mario Ortiz, Esq.
715 E. Idaho, Ste. 1-C
Las Cruces, NM 88001

and by hand to:

Arturo Gomez
U.S. Probation Officer
700 E. San Antonio, 5th Floor
El Paso, Texas 79901

                                                _____/s/_____
                                                J. BRANDY GARDES